FILED

2024 Mar-20  PM 03:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MONTE PHILON STEPHEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-00390-NAD |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER
### AFFIRMING THE DECISION OF THE COMMISSIONER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Monte Philon Stephen appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") on his claim for disability benefits.  Doc. 1.  Plaintiff Stephen applied for both supplemental security income (SSI) benefits and disability insurance benefits (DIB) with an alleged onset date of May 1, 2020.  Doc. 6-6 at 2–12; Doc. 6-4 at 31, 42.  The Commissioner denied Stephen's claim for benefits.  Doc. 6-3 at 2–6, 14–32.

In this appeal, the parties consented to magistrate judge jurisdiction.  Doc. 9; 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73.  After careful consideration of the parties' submissions, the relevant law, and the record as a whole, the court **AFFIRMS** the Commissioner's decision.

1

## ISSUES FOR REVIEW

In this appeal, Stephen argues that the Administrative Law Judge (ALJ) "erred by not giving adequate consideration to medical treatment evidence."  Doc. 10 at 2.

## STATUTORY AND REGULATORY FRAMEWORK

A claimant applying for Social Security benefits bears the burden of proving disability.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Social Security Administration (SSA) reviews an application for disability benefits in three stages:  (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council.  *See* 20 C.F.R. § 404.900(a)(1)–(4).

When a claim for disability benefits reaches an ALJ as part of the administrative process, the ALJ follows a five-step sequential analysis to determine whether the claimant is disabled.  The ALJ must determine the following:

(1)   whether the claimant is engaged in substantial gainful activity;

(2)   if not, whether the claimant has a severe impairment or combination of impairments;

(3)   if so, whether that impairment or combination of impairments meets or equals any "Listing of Impairments" in the Social Security regulations;

(4)   if not, whether the claimant can perform his past relevant work in light of his "residual functional capacity" or "RFC"; and

(5)   if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Winschel v. Commissioner of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The Social Security regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211.  At step five of the inquiry, the burden temporarily shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Washington v. Commissioner of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the Commissioner makes that showing, the burden then shifts back to the claimant to

show that he cannot perform those jobs.  *Id.*  So, while the burden temporarily shifts to the Commissioner at step five, the overall burden of proving disability always remains on the claimant.  *Id.*

## STANDARD OF REVIEW

The federal courts have only a limited role in reviewing a plaintiff's claim under the Social Security Act.  The court reviews the Commissioner's decision to determine whether "it is supported by substantial evidence and based upon proper legal standards."  *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

**A.**   With respect to fact issues, pursuant to 42 U.S.C. § 405(g), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"   *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

In evaluating whether substantial evidence supports the Commissioner's decision, a district court may not "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the Commissioner.  *Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted); *see Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (similar).  If the ALJ's decision is supported by substantial evidence, the court must affirm, "[e]ven if the evidence preponderates

against the Commissioner's findings." *Crawford*, 363 F.3d at 1158 (quoting *Martin*, 894 F.2d at 1529).

But "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden*, 672 F.2d at 838 (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)); *see Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "The ALJ must rely on the full range of evidence . . . , rather than cherry picking records from single days or treatments to support a conclusion." *Cabrera v. Commissioner of Soc. Sec.*, No. 22-13053, 2023 WL 5768387, at *8 (11th Cir. Sept. 7, 2023).

**B.** With respect to legal issues, "[n]o . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.

## BACKGROUND

### A.    Procedural background

Stephen previously filed an application for disability benefits that ultimately was denied on May 13, 2020. *See* Doc. 6-4 at 2–27.

Later in May 2020, Stephen filed applications for both SSI and DIB, alleging disability due to a bulging disk, numbness in his left knee, severe lower back pain, nerve damage, and sciatica, with an alleged onset date of May 1, 2020.

Doc. 6-6 at 2–12; Doc. 6-4 at 31, 42; Doc. 6-7 at 2–6.  On October 20, 2020, Stephen's applications were denied at the initial level based on a finding that Stephen could perform light work and consequently was not disabled.  Doc. 6-4 at 31–54; Doc. 6-5 at 2, 10.

On May 7, 2021, Stephen requested reconsideration of the initial denial of benefits.  Doc. 6-5 at 15.  On October 7, 2021, Stephen's applications again were denied on reconsideration.  Doc. 6-4 at 56–76; Doc. 6-5 at 23–24.

On December 6, 2021, Stephen requested a hearing before an ALJ (Doc. 6-5 at 30), and on May 3, 2022, the ALJ held a telephonic hearing (Doc. 6-3 at 40–42).  On June 27, 2022, the ALJ issued an unfavorable decision.  Doc. 6-3 at 14–32.

On September 7, 2022, Stephen appealed the ALJ's denial of benefits.  Doc. 6-5 at 106.  On January 19, 2023, the Appeals Council denied Stephen's request for review of the ALJ's June 27, 2022 decision, finding no reason to review the ALJ's decision.  Doc. 6-3 at 2–6.  Because the Appeals Council found no reason to review the ALJ's decision, the ALJ's decision became the final decision of the Commissioner.  *See* 42 U.S.C. § 405(g).

## B.    Factual background, and ALJ hearing

Stephen was born on April 23, 1973.  Doc. 6-6 at 9; Doc. 6-7 at 2.

The record shows that Stephen sought treatment for back and leg pain on

multiple occasions.[1]  From February 5, 2018, to May 12, 2019, Stephen reported to the emergency department at Princeton Baptist Medical Center 5 times with complaints of chronic lower back pain and leg pain that sometimes was made worse by falls; he typically had normal range of motion—though sometimes with some limited movement in his back—was ambulatory, and was treated conservatively with medication and exercise recommendations.  Doc. 6-8 at 6–104; Doc. 6-9 at 2–25.

From March 29, 2018, until April 15, 2020, Stephen received primary care and physical therapy at Cooper Green Mercy Health Services; Stephen's chief complaints at his visits were sciatica and lower back and leg pain.  Doc. 6-9 at 52–66.  Stephen's conditions were treated conservatively with medication and therapy.  Doc. 69 at 53–66.  In March 2018, Stephen did not show evidence of significant disc disease.  Doc. 6-9 at 54, 72.  Stephen was discharged from physical therapy in May 2018 for failure to comply with therapy.  Doc. 6-9 at 56.  Stephen had intact strength in his right leg and 4/5 strength in his left.  Doc. 6-9 at 67.

From March 12, 2019, until September 24, 2019, Stephen went to Cahaba Medical Care Foundation 3 times for lower back and left leg/knee pain and hypertension; his pain was treated conservatively with medication, and Stephen

---

[1] In addition to the medical records discussed in this section, the administrative record also contains records from the file of Stephen's prior application for benefits, which span a time period from September 2016 to May 2019.  Doc. 6-10; Doc. 6-11; Doc. 6-12; Doc. 6-13 at 1–86.

was "skeptical" of surgical intervention.  Doc. 6-9 at 29–47.  Imaging of Stephen's knee in September 2019 showed only some medial joint line narrowing bilaterally and increased calcification below the tibial plateau, but no acute abnormality.  Doc. 6-9 at 31, 45–46.

On July 16, 2020, Stephen filled out an adult function report describing his daily activities and how they were affected by his impairments; Stephen stated that his activities were heavily affected by pain and medication side effects.  Doc. 6-7 at 16–24.

On September 15, 2020, Stephen underwent a consultative examination with nurse practitioner Cassandra Warner Frieson, who opined that her physical examination of Stephen was consistent with his stated functional limitations.  Doc. 6-9 at 84–90.

On March 25, 2021, Stephen reported to the emergency department at Princeton Baptist Medical Center with shortness of breath and lightheadedness but no back pain and normal range of motion.  Doc. 6-13 at 87–92.  On May 26, 2021, Stephen reported to the emergency department at Princeton Baptist Medical Center with congestion, vomiting, and diarrhea; he had normal range of motion and was generally well-appearing.  Doc. 6-14 at 2–9.

On April 19, 2021, May 17, 2021, and June 14, 2021, Stephen reported to Vulcan Pain Management with low back pain, and reported problems of chronic

pain syndrome, degenerative joint disease involving multiple joints, spinal spondylosis, and long term drug therapy.  Doc. 6-9 at 93–105.  Stephen was taking medication including hydrocodone for pain.  Doc. 6-9 at 96–104.  He had pain with range of motion and ambulation, as well as some limited range of motion.  Doc. 6-9 at 94–103.  Stephen did not wish to undergo surgery.  Doc. 6-9 at 96–104.  He had at least a 4/5 in strength.  Doc. 6-9 at 103.  Review of an MRI from May 3, 2018,[2] showed some disc protrusion, moderate stenosis, and mild degenerative disc disease.  Doc. 6-9 at 96, 100, 108–09.  Stephen reported that his treatment with medication reduced his pain and improved his quality of life and function.  Doc. 6-9 at 96–103.  Conservative treatment of postural exercises at home, in addition to his medication, was recommended.  Doc. 6-9 at 96–104.

On July 1, 2021, Stephen's roommate Keith Jefferies filled out an adult third-party function report for Stephen, detailing his observations of Stephen's daily activities and limitations.  Doc. 6-7 at 52–59.

On August 9, 2021, Stephen underwent a mental health consultative examination with Shaneika Shelton, a psychiatric nurse practitioner, who opined that Stephen was cognitively unimpaired in his work abilities.  Doc. 6-9 at 111–14.

On August 17, 2021, Stephen underwent a consultative medical evaluation

---

[2] While the Vulcan Pain Management records list the MRI as being from May 3, 2019 (Doc. 6-9 at 96, 100), the enclosed record of the MRI—though difficult to decipher—appears to show that it actually was taken on May 3, 2018 (Doc. 6-9 at 108–09).

with Dr. Bruce Romeo, who opined after examination that Stephen had virtually no limitations except some lifting restrictions.  Doc. 6-9 at 116–29.  In formulating his opinion, Dr. Romeo considered Stephen's May 3, 2018[3] MRI results, as well as August 2021 x-rays that showed a normal lumbar spine and normal left knee.  Doc. 6-9 at 116, 122–23.

On September 6, 2021, Stephen reported to the emergency department at Princeton Baptist Medical Center after a single car, motor vehicle accident, complaining of pain in his elbows and knees from the accident and chronic back pain.  Doc. 6-14 at 17–19.  He had tenderness in his back and knees, but generally normal range of motion.  Doc. 6-14 at 23–24.  Imaging of Stephen's lumbar spine showed no acute abnormality, moderate diffuse osteopenia (loss of bone density), "bilateral lumbrosacral assimilation joints which can be a source of pain," and mild lower lumbar facet osteoarthritis.  Doc. 6-14 at 25.  X-rays of Stephen's knees showed no acute abnormality.  Doc. 6-14 at 27.

On December 18, 2021, Stephen reported to the emergency department at Princeton Baptist Medical Center with shoulder pain and numbness and refused to have blood work done.  Doc. 6-14 at 31–34.  Imaging of his cervical spine showed no acute abnormality.  Doc. 6-14 at 38.

---

[3] Like Vulcan Pain Management, Dr. Romeo refers to the MRI as being from May 3, 2019, but the information included is consistent with the apparent May 3, 2018 MRI.  *See* Doc. 6-9 at 108–09.

On May 3, 2022, the ALJ held a telephonic hearing on Stephen's application for disability benefits.  Doc. 6-3 at 40–42.  During the hearing, Stephen testified that he had been in a motor vehicle accident in 2017 that had caused issues in his lumbar spine, and that he suffered from osteoarthritis in his left knee.  Doc. 6-3 at 44–47.  Stephen testified that he walked about 15 minutes daily, then came home to relax due to pain in his left leg and back; he said he had a prescription for a cane because he had frequent falls.  Doc. 6-3 at 52, 56.  Stephen testified that he could stand for about 15 minutes and sit for 15 to 20 minutes before needing to stretch, and that he needed to lie down for about half of the day.  Doc. 6-3 at 58–61.  He stated that he was taking prescription pain medication.  Doc. 6-3 at 60.  Stephen testified that he thought he would miss 2 out of 5 days of work per week due to pain, could lift 15 pounds, and could not bend, squat, or kneel.  Doc. 6-3 at 63–64.  Stephen testified that he does no chores.  Doc. 6-3 at 66–67.  He testified that his pain exacerbated his high blood pressure.  Doc. 6-3 at 68–69.

Vocational Expert (VE) Joshua Tilton testified that a hypothetical individual with Stephen's age, education, work experience, and the limitations posed by the ALJ could perform jobs that existed in significant numbers in the national economy.  Doc. 6-3 at 69, 73–75.

### C.    ALJ decision

On June 27, 2022, the ALJ entered an unfavorable decision.  Doc. 6-3 at 14–

32.  In the decision, the ALJ found that Stephen met the requirements for insured status through September 30, 2023.  Doc. 6-3 at 18.  "After careful consideration of all the evidence," the ALJ concluded that Stephen "has not been under a disability within the meaning of the Social Security Act from May 1, 2020, through the date of this decision."  Doc. 6-3 at 18.

The ALJ applied the five-part sequential test for disability (*see* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Winschel*, 631 F.3d at 1178).  Doc. 6-3 at 18–19.  The ALJ found that Stephen was insured through September 30, 2023, that Stephen had engaged in substantial gainful activity during the fourth quarter of 2021, but that his earnings record did not show consistent work activity at or above substantial gainful activity, and that Stephen had severe impairments of "degenerative disc disease and degenerative joint disease of the bilateral knees."  Doc. 6-3 at 20.  The ALJ also found that Stephen had non-severe impairments of hypertension and depression.  Doc. 6-3 at 20.  The ALJ found that Stephen did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the applicable Social Security regulations.  Doc. 6-3 at 22.

The ALJ determined Stephen's RFC (or residual functional capacity), finding that Stephen could "perform sedentary work" as defined in the regulations, except that he could only occasionally operate foot controls with his left lower

extremity; could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; should never climb ladders, ropes, scaffolds, nor crawl; could only have occasional exposure to extreme cold or full body vibration; and should have no exposure to hazards such as unprotected heights and hazardous machinery. Doc. 6-3 at 22. The ALJ stated that the ALJ had considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Doc. 6-3 at 22. The ALJ also stated that the ALJ had considered any medical opinions and prior administrative medical findings. Doc. 6-3 at 22–23.

In assessing Stephen's RFC and the extent to which his symptoms limited his function, the ALJ stated that the ALJ "must follow" the required "two-step process": (1) "determine[] whether there is an underlying medically determinable physical or mental impairment[] . . . that could reasonably be expected to produce the claimant's pain or other symptoms"; and (2) "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." Doc. 6-3 at 23.

In determining Stephen's RFC, the ALJ considered information from Stephen's disability report and hearing testimony regarding the limitations from his impairments, including testimony that Stephen walks daily to avoid getting stiff, walks about 15 minutes before sitting down, and could stand for about 15 minutes

and sit for about 15 to 20 minutes before needing a break to change positions. Doc. 6-3 at 23.

The ALJ then found that, "after careful consideration of the evidence," Stephen's medically determinable impairments could "reasonably be expected to cause some symptoms and/or functional limitations," but that Stephen's "allegations concerning the intensity, persistence, and limiting effects of these symptoms are inconsistent with the objective medical evidence, treatment regimen and response to treatment, and daily activities."  Doc. 6-3 at 23.  The ALJ went on to find that Stephen's "statements about the intensity, persistence, and limiting effects of his symptoms, are inconsistent because the evidence generally does not support the alleged loss of functioning," finding that, "[s]pecifically, the allegations as to the severity of the claimant's limitations and health symptoms are not wholly consistent with the lack of on-going or aggressive treatment and an absence of objective evidence or remarkable clinical findings on examination showing limitation to the degree alleged."  Doc. 6-3 at 24.

The ALJ then summarized the evidence underlying the decision, finding that Stephen testified that he had a motor vehicle accident in 2017 and sustained injuries that continued to cause him pain and limitation.  Doc. 6-3 at 24.  The ALJ summarized medical records from an emergency department visit for back pain in February 2018 during which Stephen reported numbness, tingling, and left leg

14

weakness, but was able to ambulate, and was treated conservatively.  Doc. 6-3 at 24.  The ALJ then found that Stephen sought medical treatment for back pain in September 2021, at which time imaging showed "moderate diffuse osteopenia, bilateral lumbrosacral joint assimilation, and mild lower lumbar facet osteoarthritis," but "no acute lumbar spine abnormality."  Doc. 6-3 at 24.  The ALJ found that imaging also showed "bridging anterior osteophyte from the left lateral process at C6-C7," but no dislocation or fracture and no acute cervical spine abnormality.  Doc. 6-3 at 24.  The ALJ found that Stephen had degenerative disc disease, but demonstrated full range of motion during a consultative examination, had negative straight leg raise, and was able to perform postural activities.  Doc. 6-3 at 24.  Citing to records from Cooper Green Hospital (spanning from March 29, 2019, to April 14, 2020), and records from Dr. Romeo's consultative examination, the ALJ found that Stephen regularly had strength at a level of at least a 4/5.  Doc. 6-3 at 24.  The ALJ also found that, "throughout the record," Stephen's degenerative disc disease was conservatively managed.  Doc. 6-3 at 24.

Citing records from Cahaba Medical Care Foundation, the ALJ found that Stephen had been diagnosed with degenerative joint disease of the bilateral knees.  Doc. 6-3 at 24.  The ALJ found that imaging of Stephen's knees in September 2019, August 2021, and September 2021, showed no major abnormalities.  Doc. 6-3 at 24.  The ALJ found that Stephen had sought treatment for a series of falls, but

in December 2021 refused to have bloodwork done. Doc. 6-3 at 24–25. The ALJ found that records showed that Stephen was able to squat during a consultative examination and had no atrophy, and that he had functional gait. Doc. 6-3 at 25.

The ALJ then summarized and considered the consultative examinations and opinions of Frieson, Shelton, and Dr. Romeo, as well as 3 medical assessments/opinions from before Stephen's alleged onset date of May 1, 2020. Doc. 6-3 at 26. The ALJ considered the administrative medical findings in the record, and assessed the persuasiveness of the opinions of the consultative examiners. Doc. 6-3 at 26–28. In doing so, the ALJ found that the opinion of consultative examiner Dr. Romeo was not persuasive because Stephen required more accommodations than Dr. Romeo opined that Stephen would need. Doc. 6-3 at 28.

The ALJ found that Stephen was unable to perform any past relevant work. Doc. 6-3 at 29.

At step five, after considering Stephen's age, education, work experience, RFC, and the testimony of the VE, the ALJ found that there were jobs that existed in significant numbers in the national economy that Stephen could perform. Doc. 6-3 at 30. Consequently, the ALJ found that Stephen had not "been under a disability, as defined in the Social Security Act, from May 1, 2020, through the date of this decision." Doc. 6-3 at 31.

## DISCUSSION

Having carefully considered the record and briefing, the court concludes that the ALJ's decision was supported by substantial evidence and based on proper legal standards. The ALJ did not err in consideration of the medical evidence.

In his brief, Stephen argues that the ALJ "erred by not giving adequate consideration to the medical treatment evidence." Doc. 10 at 2. Stephen argues that the ALJ erred by finding that Stephen's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the record—specifically, the lack of on-going or aggressive treatment—because the ALJ failed to discuss the records from Stephen's April, May, and June 2021 visits to Vulcan Pain Management and his MRI results from May 2018. Doc. 10 at 4–9. Stephen argues that the failure to discuss the records from Vulcan Pain Management shows that the ALJ erred as a matter of law because the ALJ failed to consider the evidence as a whole and to provide sufficient reasoning for the ALJ's decision. Doc. 10 at 7.

The ALJ's failure to explicitly discuss the records from Vulcan Pain Management and the May 2018 MRI does not constitute reversible error because the record shows that the ALJ adequately considered the record as a whole. The district court reviews the ALJ's decision to determine "whether the ALJ's conclusion as a whole was supported by substantial evidence in the record." *Dyer*

*v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  In this regard, the Eleventh Circuit has made clear that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [the ALJ's] decision."  *Noble v. Commissioner of Soc. Sec.*, 963 F.3d 1317, 1329 (11th Cir. 2020) (quoting *Dyer*, 395 F.3d at 1211).  Rather, the ALJ's decision simply must not constitute "a broad rejection which is 'not enough to enable [the district court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'"  *Dyer*, 395 F.3d at 1211 (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

Here, the ALJ's decision shows that, despite the lack of an explicit discussion of Stephen's visits to Vulcan Pain Management, the decision was not merely a "broad rejection" showing that the ALJ did not consider Stephen's subjective testimony and medical record as a whole.  *See Dyer*, 395 F.3d at 1211.  In the ALJ's decision, the ALJ considered medical evidence spanning from 2018 to 2021 that showed no notable serious abnormality in Stephen's back or knees, including imaging that post-dated the May 2018 MRI referenced by Vulcan Pain Management.  Doc. 6-3 at 24–25.  The ALJ found Stephen's relatively normal range of motion and strength on multiple occasions throughout the medical record, and found that "throughout the record" Stephen's degenerative disc disease was conservatively treated.  Doc. 6-3 at 24–25.  The ALJ also considered and addressed the records of multiple consultative medical examinations.  Doc. 6-3 at 26–28.

The ALJ's explanation of the basis for the decision shows a meaningful consideration of Stephen's subjective testimony and the evidence as a whole. *See Dyer*, 395 F.3d at 1211. As noted above, a court must affirm a decision supported by substantial evidence "[e]ven if the evidence preponderates against the Commissioner's findings" (*Crawford*, 363 F.3d at 1158), and the court cannot "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the Commissioner (*Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted)). But, nothing in the Vulcan Pain Management records or the 2018 MRI results stands so contrary to the ALJ's findings and the evidence explicitly mentioned by the ALJ that it shows that the ALJ did not consider the entire record. *Accord Cabrera*, 2023 WL 5768387, at *8 ("The ALJ must rely on the full range of evidence . . . , rather than cherry picking records from single days or treatments to support a conclusion."). The 2018 MRI showed some disc protrusion, moderate stenosis, and mild degenerative disc disease (Doc. 6-9 at 96, 100, 108–09), but nothing so evidently severe as to contradict the ALJ's finding of "an absence of objective evidence or remarkable clinical findings on examination showing limitation to the degree alleged" (Doc. 6-3 at 24). In addition, the Vulcan Pain Management records show a lack of desire for surgery, relatively normal strength, and conservative treatment including recommendations of home exercises. Doc. 6-9 at 96–104. Thus, the Vulcan Pain Management records are generally consistent

with the ALJ's findings and the medical evidence explicitly cited by the ALJ (Doc. 6-3 at 24; *see, e.g.*, Doc. 6-8 at 6–104; Doc. 6-9 at 2–47, 67), with the ALJ's finding that Stephen's degenerative disc disease was conservatively managed throughout the record (Doc. 6-3 at 24), and with the ALJ's finding of a lack of on-going or aggressive treatment (Doc. 6-3 at 24).

Likewise, the ALJ's finding of Stephen's limitations also shows a full consideration of the record.  Based on the whole of the evidence, including Stephen's testimony and the medical evidence, the ALJ actually found that Stephen required *more* restrictions than those suggested by the state agency consultants—who opined that Stephen could do light work (*see* Doc. 6-4 at 31–54; Doc. 6-5 at 2, 10)—and Dr. Romeo—who opined that Stephen had very few limitations[4] (*see* Doc. 6-9 at 116–29).  The ALJ's decision to restrict Stephen to sedentary work with limitations (Doc. 6-3 at 22) shows that the ALJ's decision was more than just a broad rejection of Stephen's claim, even if the ALJ did not "specifically refer to every piece of evidence"—which the ALJ was not required to do.  *See Noble*, 963 F.3d at 1329; *Dyer*, 395 F.3d at 1211.  In other words, the lack of explicit discussion of the Vulcan Pain Management records and the 2018 MRI does not show that the ALJ's conclusion was not supported by substantial evidence in the record.  *See Dyer*, 395. F.3d at 1211.

---

[4] Dr. Romeo did explicitly consider the 2018 MRI mentioned in the Vulcan Pain Management records and Stephen's brief.  Doc. 6-9 at 116.

Accordingly, nothing in the record shows that the ALJ's decision was not "supported by substantial evidence and based upon proper legal standards."  *See Lewis*, 125 F.3d at 1439.

## CONCLUSION

For the reasons stated above (and pursuant to 42 U.S.C. § 405(g)), the Commissioner's decision is **AFFIRMED**.  The court separately will enter final judgment.

**DONE** and **ORDERED** this March 20, 2024.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE